IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RONNIE V. WILLIAMS, #239426,           )
a.k.a., Ronald Vincent Williams, #239426,[1]  )
                                        )
    Plaintiff,                          )
                                        )
    v.                                  )        CASE NO. 2:15-CV-729-WKW
                                        )               [WO]
CLIFF WALKER, *et al.*,                 )
                                        )
    Defendants.                         )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint filed by Ronnie V. Williams, an indigent state inmate, against Cliff Walker, Bill Wynne, and Robert Longshore, members of the Alabama Board of Pardons and Paroles; Phil Bryant, Executive Director of the Alabama Board of Pardons and Paroles; and Christopher Causey, a senior parole officer.[2]  In the amended complaint, Williams alleges the parole board members relied on false information when rendering the decision to deny him parole in June 2015. Doc. 13 at 6.  Williams seeks a declaratory judgment, injunctive relief, and monetary damages for the alleged violations of his constitutional rights.

---

[1] In the numerous civil actions in this court, the plaintiff interchangeably identifies himself as Ronnie V. Williams, Ronald Vincent Williams, and Ronnie Williams—AIS No. 239426.

[2] Although Williams identifies the latter defendant as Mr. Cause, the defendants advise the court that this defendant's correct name is Christopher Causey.  For purposes of this recommendation, the court will refer to this defendant by his correct name.

The defendants filed special reports and relevant evidentiary materials addressing the claims for relief raised by Williams.  In these filings, the defendants deny that Williams' parole file contains any false or incorrect information with respect to another inmate named Ronnie Williams. Docs. 36-1, 36-3, 49-1 & 49-2.  The defendants further assert they did not knowingly rely on any false information in denying Williams' parole. Docs. 36-1, 36-3, 49-1 & 49-2.  Finally, the defendants maintain that the absence of information from Williams' parole file regarding a 1987 conviction for receiving stolen property did not impact their decision to deny parole. Docs. 50-1 & 50-3.

After reviewing the initial special report and first supplemental special report filed by the defendants, Docs. 36 & 41, the court issued an order on February 3, 2016 directing Williams to file a response to each of the arguments set forth by the defendants in their reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 42 at 1-2.  The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 42 at 3.  Williams filed responses to these reports on January 27, 2016 and February 5, 2016. Docs. 38, 43 & 44.  The court required the submission of additional

special reports from the defendants and provided Williams an opportunity to file a response to these supplemental special reports. Docs. 45 & 50.  The defendants filed the requisite supplemental special reports, Docs. 49 & 51, and Williams filed his response to these last two supplemental special reports on March 24, 2016. Doc. 52.

Pursuant to the directives of the orders entered in this case, the court now treats the defendants' reports collectively as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no

genuine dispute of material fact for trial).   The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).   In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.   In respect to the latter, our inferences must accord deference to the views of prison authorities.   Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).   This court will also consider "specific facts"

pleaded in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Williams' *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After this review, the court finds that Williams has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  DISCUSSION

**A.     Absolute Immunity—Official Capacity Claims**

To the extent Williams requests monetary damages from the defendants in their official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees].  There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity.  A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute.  Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here.  The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has

> recognized that this prohibits Alabama from waiving its immunity from
> suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978)).

"Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has

Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr*

*v. City of Florence, Ala*., 916 F.2d 1521, 1525 (11th Cir. 1990)).   For the reasons, the

defendants are entitled to sovereign immunity under the Eleventh Amendment for claims

seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x

at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that

state officials sued in their official capacities are protected under the Eleventh

Amendment from suit for damages); *Edwards v. Wallace Comm. College*, 49 F.3d 1517,

1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in

his official capacity).

**B.      Quasi-Judicial Immunity—Individual Capacity Claims**

Insofar as Williams seeks monetary damages from the defendants for actions

relative to the parole consideration process and the denial of parole, he is likewise

entitled to no relief.   The courts of this Circuit have long recognized that parole board

officials are entitled to quasi-judicial immunity from suits requesting damages based

upon decisions to grant, deny, or revoke parole. *Fuller v. Ga. St. Bd. of Pardons &*

*Parole*, 851 F.2d 1307 (11th Cir. 1988); *Cruz v. Skelton,* 502 F.2d 1101, 1101–02 (5th

Cir. 1974).  All of the actions about which Williams complains arose during proceedings

resulting in the denial of parole.   Under these circumstances, the actions of parole

officials are inextricably intertwined with their decisionmaking authority, and they are therefore immune from payment of monetary damages.  Consequently, the plaintiff's claim for damages against the defendants in their individual capacities is due to be summarily dismissed.

## C.  Material Facts

Williams is currently confined in the Alabama state prison system on a sentence of twenty years imposed upon him in 2005 by the Circuit Court of Mobile County, Alabama for a manslaughter conviction.  Williams also has a 1987 conviction for second degree receiving stolen property.  The parole decision relevant to this cause of action occurred on June 16, 2015.  On this date, defendants Walker and Longshore voted to deny parole to Williams. Doc. 49-5.

## D.  Respondeat Superior and Vicarious Liability

Defendants Walker and Longshore are the only employees of the Parole Board who in any manner participated in the decision to deny Williams' parole in June 2015. Thus, the claims against the remaining parole defendants entitle Williams to no relief as these claims are based on theories of respondeat superior and vicarious liability.

The law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability]. . . . A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly

employed [alongside,] by or under him, in the discharge of his official duties.  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation, and parentheses omitted); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (holding that a supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999 (holding that 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.  Thus, liability for actions of defendants Walker and Longshore could attach to the other named defendants only if these defendants "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Williams, however, has presented no evidence which would create a genuine issue of disputed fact with respect to the claims lodged against defendants Wynne, Bryant, and Causey.  The evidentiary materials filed in this case which could be presented at trial demonstrate that these defendants did not personally participate in or have any involvement with the claim on which Williams seeks relief.  In light of the foregoing, defendants Wynne, Bryant, and Causey can be held liable for actions of defendants Walker and Longshore only if their actions bear a causal relationship to the purported violation of Williams' constitutional rights.

To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendants Wynne, Bryant, and Causey, Williams must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [these defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so . . ." or a "custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [these defendants] directed [defendants Walker and Longshore] to act unlawfully, or knew that [they] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  The pleadings and evidentiary materials submitted in this case demonstrate that Williams has failed to meet this burden.

The record before the court contains no evidence to support an inference that defendants Wynne, Bryant, and Causey directed Walker and Longshore to act unlawfully

or knew that they would act unlawfully and failed to stop them.  In addition, Williams has presented no evidence of obvious, flagrant, or rampant abuse of continuing duration in the face of which these defendants failed to take corrective action.  Finally, it is clear that the challenged action did not occur pursuant to a policy enacted by Wynne, Bryant, or Causey.   Thus, the requisite causal connection does not exist between the actions challenged by Williams and the conduct of the aforementioned defendants and liability under the custom or policy standard is not warranted.  Summary judgment is therefore due to be granted in favor of defendants Wynne, Bryant, and Causey.

### E.    False, Erroneous, or Incorrect Information

Williams alleges that defendants Walker and Longshore relied on false, erroneous, or incorrect information to deny him parole. Doc. 13 at 5–6.  Specifically, Williams makes the conclusory and unsupported allegation that his parole file contains information related to another inmate with the name Ronnie Williams, including this inmate's conviction for a sex offense and his status on the mental-health treatment list. Doc. 13 at 6.  Williams alleges that Walker and Longshore relied on this erroneous information in making the decision to deny his parole on June 16, 2015. Doc. 13 at 6.

In addition, Williams complains that in June 2015 his parole file did not contain information regarding his 1987 conviction for receiving stolen property. Doc. 13 at 6. The defendants concede that during the 2015 parole consideration process Williams' parole file did not reference his 1987 receiving-stolen-property conviction. Docs. 49-1 & 49-2.  Despite this concession, defendants Walker and Longshore state that the lack of

this information "had no impact" on the decision to deny Williams parole and, if anything, the absence of this information "would have been favorable" to Williams. Docs. 50-1 at 1 & 50-3 at 1.

Defendants Walker and Longshore deny that there is any information in Williams' parole file that relates to another inmate and maintain that his file does not contain any false or erroneous information. Docs. 36-1, 36-3, 49-1 & 49-2. Moreover, these defendants aver they did not rely on false or erroneous information in voting to deny Williams' release on parole. Docs. 36-1, 36-3, 49-1 & 49-2.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on admittedly false information to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution. The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Board of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. In the case at bar, we are confronted with

> prison authorities who admit that information contained in Monroe's files is
> false and that they relied upon such information, at least in part, to deny
> Monroe parole and to classify him as a sex offender.  As we stated, the
> parole statute does not authorize state officials to rely on knowingly false
> information in their determinations.

*Monroe*, 932 F.2d at 1442 (citations omitted).  *Slocum* controls the disposition of the

instant false information claim.

Defendants Walker and Longshore maintain that the information in Williams'

parole file is true and that their reliance on this information did not infringe on any of

Williams' constitutional rights.  Of specific importance, there is no admission by the

defendants that the information actually utilized to deny Williams' parole is false,

incorrect, or erroneous.  Williams has failed to come forward with any evidence which

indicates that the defendants knowingly relied on false, erroneous, or incorrect

information during the parole consideration process.  Moreover, Williams' conclusory

assertion regarding the potential use of false information does nothing more than raise the

possibility that information in his records may be false—and this mere possibility fails to

provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944, 946

(11th Cir. 2001) (holding that "prisoners cannot make a conclusory allegation regarding

the use of [false] information as the basis of a due process claim").  With respect to the

absence of information regarding Williams' 1987 receiving-stolen-property conviction, it

is undisputed that the lack of this information did not impact the defendants' decision to

deny Williams parole and, if known to the defendants, would not have altered their

decision. Docs. 50-1 at 1 & 50-3 at 1.  As stated by the defendants, the omission of this

information placed Williams in a more favorable position during the parole consideration proceedings. Docs. 50-1 at 1 & 50-3 at 1.  Thus, Williams is due no relief based on this omission.

In sum, defendants Walker and Longshore, in their discretion and based on information they deemed accurate, determined that Williams should not be released on parole. *Monroe*, 932 F.2d at 1443 (noting that, generally, decisions related to the release of an inmate on parole are the province of state parole boards and not the courts); *Thomas*, 691 F.2d at 489 (holding that federal courts should limit their interference in the decisions of state parole boards).   The record before the court establishes that the defendants did not rely on admittedly false information in denying Williams release on parole.  Consequently, Williams is entitled to no relief as a matter of law and entry of summary judgment in favor of defendants Walker and Longshore is therefore appropriate.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The defendants' motion for summary judgment be GRANTED.

2.      Judgment be GRANTED in favor of the defendants.

3.      This case be DISMISSED with prejudice.

4.      Costs be taxed against the plaintiff.

On or before **May 7, 2018**, the parties may file objections to this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.

Frivolous, conclusive, or general objections to the Recommendation will not be considered.   Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 23rd day of April, 2018.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE